UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| RASHAD WOODSIDE, | ) |
| --- | --- |
| Petitioner, | ) |
| v. | ) 3:20-cv-00221 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Sentenced to 170 months for his role in a 24-defendant conspiracy to possess and distribute Oxycodone, Hydromorphone, Oxymorphone, and Buprenorophine in violation of 21 U.S.C. § 846, Rashad Woodside has filed an Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 8). The Government has filed a response in opposition to the Motion (Doc. No. 24), but acknowledges the need for an evidentiary hearing on most of Woodside's claims. This is because six of the seven claims allege ineffective assistance of counsel, including the failure to (1) file a motion to suppress; (2) present evidence regarding drug quantities; (3) present evidence challenging Woodside's leadership role; (4) advise Woodside of the right to testify; and (5) explain the elements of a conspiracy, as opposed to a mere buyer-seller relationship. Counsel was also allegedly ineffective or deficient because he (6) incorrectly told Woodside that he would qualify for the "safety valve" under U.S.S.G. § 5C1.2.

Woodside was represented by attorney Hilton Napoleon. In keeping with the standard practice in this District, the Government approached Napoleon and asked him for an affidavit in an effort to challenge Woodside's ineffectiveness claims. Counsel "politely" refused, even though the

1

attorney-client privilege "may be implicitly waived by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance," In re Lott, 424 F.3d 446, 452–53 (6th Cir. 2005), and even though Napoleon was informed by the Government that the failure to provide an affidavit would likely result in him having to travel from his office in Miami, Florida to Nashville Tennessee for a hearing. (Doc. No. 14 at 2).

In Napoleon's defense, it may be he thought a sworn statement would be of limited assistance to the Court because it would not resolve all of Woodside's claims. For example, deciding whether Napoleon advised Woodside of his right to testify or incorrectly advised him that he would qualify for the safety valve are issues that can only be determined after hearing the testimony of both Napoleon and Woodside, and gauging their respective credibility. Regardless, it is clear that an evidentiary hearing will be necessary to resolve the self-standing ineffective assistance of counsel claims, as well as Woodside's claim that the alleged ineffectiveness of counsel rendered his plea involuntary, unintelligent, or unknowingly made. A ruling on those claims is therefore reserved until such a time as a hearing can be held.

One claim requires no hearing, however. Woodside asserts his plea was involuntary or unintelligent because then-Judge Kevin H. Sharp "never advised [him] directly of his right to a jury trial and a jury determination." (Doc. No. 8 at 13) (footnote omitted). This omission, however, does not require that the plea Woodside entered be vacated or set aside.

Rule 11 of the Federal Rules of Criminal Procedure provides that, before accepting a guilty plea, the Defendant must appear in open court, during which time the Court "must inform the defendant of, and determine that the defendant understands . . . the right to a jury trial," Fed. R. Crim. P. 11(c), among other things. The rule goes on to provide, however, that "[a] variance from

the requirements of this rule is harmless error if it does not affect substantial rights." Id.; see also United States v. Battle, 769 F. App'x 260, 263 (6th Cir. 2019) ("Rule 11 does not require strict compliance."); United States v. Castillo-Partida, 79 F. App'x 163, 164 (6th Cir. 2003)("The proceedings are reviewed for substantial compliance with Fed. R. Crim. P. 11 and will not be disturbed unless the substantial rights of the defendant have been adversely affected."). This includes the failure to specifically inform a defendant of the right to a jury trial, so long as the record otherwise shows that the defendant was aware of that right. United States v. Amaya-Rivas, 784 F. App'x 671, 675 (11th Cir. 2019); United States v. Harper, 737 F. App'x 17, 22 (2d Cir. 2018) United States v. Mason, 38 F. App'x 458, 459 (9th Cir. 2002); United States v. Cuevas-Andrade, 232 F.3d 440, 445 (5th Cir. 2000).

In this case, a change of plea hearing for both Woodside and Peter Lewis, a co-defendant, was held at the same time. Judge Sharp began by asking Lewis questions and, during the course of that colloquy, Lewis was informed that "you have the right to have your case heard by a jury of your peers consisting of 12 individuals from the community." (Case No.3:13-cr-00097, Doc. No. 1289, Plea Transcript at 12). Judge Sharp overlooked making that same statement when it came time to address Woodside, however. Nevertheless, Woodside was told by Judge Sharp that "the government would have to prove the charge against you and the elements of that charge beyond a reasonable doubt to the satisfaction of the jury and the Court." (Id. at 26). Woodside was further asked if he understood that "by pleading guilty here today, . . . there will be no trial and you'll be adjudicated guilty?," (Id. at 32), to which he responded in the affirmative. This alone suggest that Woodside knew he had a right to be tried by a jury.

Further, and regardless of what precisely was said or not said during Woodside's portion of

3

the change of plea hearing, Woodside signed a Plea Petition in which he acknowledge his right to have a jury hear the charges against him. Specifically, the plea petition stated that Woodside could continue to plead "not guilty," and if he did so the Constitution guaranteed him "the right to a speedy and public trial by jury" and that the Government would have to prove him "guilty beyond a reasonable doubt to the satisfaction of the court and jury." (Case No. 3:13-cr-00097, Doc. 570 at 2 ¶ 10). The same paragraph apprised Woodside that if he pled guilty and the Court accepted his plea, "there will be no jury trial and that I will be convicted of the count[(s) to which I plead just as if a jury found me guilty of the charge[s] following a trial, and that the Court may impose sentence upon me as if I had been convicted by a jury." (Id. at 2-3).

Besides, even if the Court were to ignore all of the above, the Supreme Court has held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). Woodside has not even attempted to make that showing.

Accordingly, Woodside's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 8) is **DENIED** insofar as it is based upon Judge Sharp's alleged failure to advise him of the right to a jury trial. The Court **RESERVES RULING** on Woodside's ineffective assistance of counsel claims, and his claim that this ineffectiveness led to a plea that was not intelligently, knowingly, and voluntarily made. The Court will hold an in-person hearing on those claims on **February 25, 2021,** at 9:00 a.m.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

5